UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| KIRK W. STEPHENS, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | CAUSE NO. 1:15-CV-43 JVB |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Kirk W. Stephens seeks judicial review of the Acting Social Security Commissioner's decision denying him Supplemental Security Income (SSI) for the period from March 31, 2010, through March 17, 2013, and asks this Court to remand the case. For the reasons below, the Court affirms the decision of the Acting Commissioner.

### A.  Overview of the Case

Plaintiff argues the Administrative Law Judge (ALJ) who denied him an SSI award (1) improperly evaluated Plaintiff's obesity and failed to adequately develop the record, (2) improperly weighed relevant medical opinions, and (3) improperly evaluated Plaintiff's combined limitations and resultant Residual Functional Capacity.

On May 22, 2008, Plaintiff first submitted an application for SSI under 42 U.S.C. § 1381, which was denied. Almost two years later, Plaintiff filed a new SSI application. This second application was denied, reconsidered, and denied again. After these repeated denials, Plaintiff requested a hearing, which took place before ALJ Yvonne K. Stam. Stam ultimately found the

Plaintiff not disabled. Plaintiff requested review of the ALJ's decision from the Appeals Council, but the Council declined to do so. As a result, the denial of SSI became the Commissioner's final decision. Plaintiff then appealed the decision to the District Court. The Court reversed the decision and remanded the case for further determinations regarding the ALJ's findings of credibility; assessment of Plaintiff's obesity; and consideration of Plaintiff's heart disease, fecal incontinence, arthritis of the right ankle, and loss of fine-motor control in his right hand.

ALJ Maryann S. Bright received the case on remand and conducted a hearing where both Plaintiff and Robert S. Barkhaus, Ph.D., a vocational expert, testified. Because Plaintiff was found disabled beginning on March 18, 2013, by a favorable determination from a subsequent application for SSI, Bright's disability determination only considered the period from March 31, 2010, through March 17, 2013. Ultimately, Bright issued a decision denying Plaintiff's application for SSI, which the Appeals Council declined to review. It is this decision which Plaintiff asks this Court to reverse.

**B.**    **Standard of Review**

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court must ensure that the ALJ has built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin,* 745 F.3d 802, 806 (7th Cir. 2014). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008).

## C. Disability Standard

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue,* 697 F.3d 642, 646 (7th Cir. 2012).

The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## D. Analysis

Plaintiff asks this Court to find error in the ALJ's decision in three respects. First, Plaintiff argues the ALJ improperly evaluated Plaintiff's obesity when determining the aggregate impact of Plaintiffs impairments. He also argues the ALJ failed to fulfill her duty to adequately develop the record. Secondly, Plaintiff argues the ALJ erred in failing to give a treating physician's opinion controlling weight. Alternatively, Plaintiff argues that, regardless of whether the particular opinion is entitled to controlling weight, the ALJ erred in not weighing it in general. Third, Plaintiff argues the ALJ erred in not incorporating limitations from all medically-determinable impairments into Plaintiff's Residual Functional Capacity and in not considering the combined impact thereof.

**(1)** *The ALJ's evaluation of Plaintiff's obesity*

The prior court's remand order specifically stated that the prior ALJ did not give sufficient consideration to the aggravating effects of Plaintiff's obesity. (R. at 818–19.) The ALJ here noted this and, in addition to discussing obesity periodically throughout her decision, dedicated a paragraph to addressing the District Court's instruction. (*See* R. at 673.) There, the ALJ recognized that obesity can cause exacerbation of other limitations, but noted that Plaintiff's doctors did not report any limitations specifically due to obesity. *Id.* From this, the ALJ concluded that the medical records include the effects of obesity "in the background" on Plaintiff's other impairments. *Id.* The ALJ also noted that Plaintiff's obesity enhanced the credibility of his statements of pain and resulted in deference to his report of limitations, resulting in a sedentary limitation and a sit/stand option specifically included in the ALJ's findings of limitations. *Id.*

The ALJ is required to consider an applicant's disabilities in the aggregate. *Martinez v. Astrue,* 630 F.3d 693, 698–99 (7th Cir. 2001). As such, the ALJ must consider Plaintiff's obesity and its bearing on other disabilities. *See id.* ("It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40.").

The ALJ adequately considered Plaintiff's obesity here, though. In addition to discussing Plaintiff's obesity sporadically throughout her opinion, the ALJ dedicated the following paragraph specifically to the issue:

> The District Court found that the prior Administrative Law Judge did not give sufficient consideration to the aggravating effects of the claimant's obesity. The undersigned finds that obesity is in the background of all the treatment notes regarding musculoskeletal, cardiovascular, endocrine and respiratory impairments. The undersigned acknowledges that obesity can cause greater symptoms and limitations than the other diseases alone. However, the claimant's doctors have not separately reported any limitations due to obesity. Thus, the undersigned must conclude that the medical records include the effects of obesity when the doctors report symptoms and findings on the other impairments. It is not appropriate for the Administrative Law Judge to speculate on any possible

> additional functional effects of the claimant's obesity, except to concede that obesity does enhance the credibility of the claimant's statements of pain. This is reflected in the deference to the claimant's report of limitations, as noted above, resulting in the sedentary limitation as well as the sit/stand option.

(R. at 673.) With a body mass index of 39.1, it was reasonable for the ALJ to conclude consulting doctors would have noticed Plaintiff's obesity. (*See* R. at 666.) (identifying Plaintiff's BMI at 39.1, classified as Level II obesity under the clinical guidelines of the National Institutes of Health). Because the medical records did not specifically attribute limitations to Plaintiff's obesity, the ALJ concluded that the doctors incorporated the aggravating effects of obesity in their reports. This conclusion draws a logical bridge between evidence and conclusion and is supported by substantial evidence. *See Thomas v. Colvin,* 745 F.3d 802, 806 (7th Cir. 2014) ("[W]e will uphold the ALJ's decision so long as it is supported by 'substantial evidence' and the ALJ built an 'accurate and logical bridge' between the evidence and her conclusion.").

Furthermore, contrary to Plaintiff's argument, the ALJ was not required to independently retrieve medical examinations and records from Plaintiff's doctors dealing specifically with the effects of obesity. *See Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir. 2004) ("An ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled."). *See also* 20 C.F.R. § 404.1512(e). The ALJ had adequate evidence to determine Plaintiff was not disabled and thus was not required to develop the record further.

**(2)** *The ALJ's weighing of Dr. Sanjay Jain's opinion*

The ALJ stated in her decision "there is no opinion from any treating source or examining source." (R. at 672.) Accordingly, she gave no opinion controlling weight when making her determination. Plaintiff argues the ALJ failed to analyze Doctor Sanjay Jain's opinion regarding Plaintiff's sleep apnea and improperly failed to give the opinion the

5

controlling weight it deserved. The opinion Plaintiff claims the ALJ should have accorded controlling weight is the following statement from Doctor Jain: "He [the Plaintiff] should not drive if he has hypersomnolence." Plaintiff Opening Br. 9–10 (quoting R. at 477.) Doctor Jain's full statement is as follows: "It is recommended that the patient undergo repeat polysomnography with CPAP titration. He should not use over the counter sleeping medications, sedative-hypnotic agents or alcohol. He should not drive if he has hypersomnolence. Clinical correlation is required." (R. at 477.)

The Administration must evaluate every medical opinion it receives regarding a claimant's disability. 20 C.F.R. § 404.1527(c). It must also give an opinion from a treating medical provider "controlling weight" over opinions from non-treating sources if the opinion and treating relationship meet certain criteria. 20 C.F.R. § 404.1527(c)(2). Determining whether a medical opinion is entitled to controlling weight is often a complicated and difficult affair. *See* 78 Fed. Reg. 41352, 41353–54 (July 10, 2013) (identifying erroneous application of the treating source rule as the basis for remand by the Appeals Council and federal courts at frequency rates of 10% and 35%, respectively).

Ultimately, however, it is not necessary to embark on the multi-stage analysis determining whether Dr. Jain's "opinion" is entitled to controlling weight because it does not constitute an opinion. Controlling weight can only be given to medical opinions which meet the necessary criteria. *See* 20 C.F.R. § 404.1527(c)(2). Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

The statement Plaintiff presents reflects no judgment about his impairments at all; it merely presents a conditional which could be applied to any person who might suffer from hypersomnolence. The statement does not even diagnose the Plaintiff with hypersomnolence. In effect, it merely asserts that those with hypersomnolence should not drive. This does not constitute a medical opinion about Plaintiff's specific impairments and is therefore ineligible to be afforded controlling weight.

**(3)** *The ALJ's incorporation and consideration of all combined limitations*

Plaintiff argues the ALJ erred in failing to incorporate limitations from all medically-determinable impairments and from their combined impact into the Residual Functional Capacity (RFC) determination. Specifically, Plaintiff contends the ALJ failed to incorporate into the RFC Plaintiff's (1) frequent urination, (2) coronary artery disease, (3) balance, and (4) upper extremities.

An ALJ is tasked with determining a claimant's RFC—the most the claimant can still do despite his limitations. 20 C.F.R. 404.1545(a). In determining a claimant's RFC, the ALJ must consider all medically-determinable impairments, including those which are not severe. *Id.* The claimant's RFC must be assessed based on all relevant evidence in the record. *Id.*

(a)  *Frequent urination*

At a hearing on September 16, 2011, Plaintiff testified that he requires bathroom breaks every hour or two, and has accidents two to three times per week. (R. at 44–45.) At the same hearing, a vocational expert also testified that most employees in Plaintiff's prior work are allowed two fifteen-minute breaks with one half-hour lunch break per day, with two to three

additional breaks per week of a five- to fifteen-minute duration. (R. at 56–57.) It is on the basis of this testimony which Plaintiff asks this Court to find the ALJ neglected to incorporate Plaintiff's frequent urination into the RFC determination. This testimony was not, however, the only evidence in the record relevant to Plaintiff's urinary problems. For example, a July 14, 2011, record from Plaintiff's urologist stated his "urgency and incontinence has resolved." (R. at 507.) Urologist records from 2012 and 2013 also fail to even mention frequent urination as a problem. (R. at 1115–24.) With respect to Plaintiff's urination, the ALJ's RFC determination is supported by substantial evidence.

(b)     *Coronary artery disease*

Plaintiff argues the ALJ did not consider his aspirin regimen into her RFC determination, thereby failing to incorporate an increased risk of bleeding. Plaintiff Br. at 12, (No. 20-17). Yet Plaintiff does not point to any medical records which indicate this apparent risk of bleeding. *Id.* Nor do any appear in the record. The ALJ is only required to consider impairments which are asserted or about which the ALJ has evidence. 20 C.F.R. 404.1512(a). Furthermore, a social security claimant bears the burden of supplying evidence to prove his claim of disability. *Bibaudo v. Barnhart,* 458 F.3d 580, 583 (7th Cir. 2006). Moreover, in an appeal before a reviewing court, the plaintiff bears the burden of showing the Commissioner's decision was not based on substantial evidence. *McLaurin v. Colvin,* 121 F. Supp. 3d 134, 139 (D.D.C. 2015); *Charles v. Astrue,* 854 F. Supp. 2d 22, 27–28 (D.D.C. 2012); *Lane-Rauth v. Barnhart,* 437 F. Supp. 2d 63, 64 (D.D.C. 2006). Plaintiff cites to no medical evidence in the record indicating a bleeding risk. Plaintiff Br. at 12, (No. 20-17). Instead, he requests remand for failure of the ALJ to independently diagnose him with a bleeding risk due to the possible effects of aspirin and for

8

failure to incorporate that diagnosis into the RFC determination. Extrapolating the potential risks of a medication taken by a claimant into a diagnosis of specific risks faced by a particular claimant is not within the ALJ's authority, nor within the authority of this Court. Without at least a claim of a bleeding risk before the ALJ, and no medical evidence in support of said risk contained within the record, the ALJ could not have erred in failing to consider it. *See* 20 C.F.R. 404.1512(a) ("We will consider only impairment(s) you say you have or about which we receive evidence"). *See also Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009) (reiterating that judicial review of an ALJ's decision is limited to determining whether she applied the correct legal standards and whether there is substantial evidence to support the findings).

(c)     *Balance*

Plaintiff claims "[t]he ALJ included a frequent balancing limitation in the RFC." Plaintiff Br. at 12, (No. 20-17). He takes issue with this, asserting that "[t]he facts lean overwhelmingly toward an occasional or less balancing limitation." *Id.* at 13, (No. 20-17). It is unclear, however, where Plaintiff finds this frequent balancing limitation. The RFC determination contained within the decision on review provides that Plaintiff "can occasionally . . . balance." (R. at 667.) Even the decision by the prior ALJ contained an occasional—not frequent—balancing limitation. (R. at 19.) Plaintiff's own brief asserts the facts "lean overwhelmingly" in favor of an occasional balancing limitation. Plaintiff Br. at 13, (No 20-18). Without some additional explanation or citation, which Plaintiff does not provide in his Reply brief, the Court must conclude he has conceded the ALJ's occasional balancing limitation is supported by substantial evidence.

(d)     *Upper extremities*

9

Finally, Plaintiff asserts the ALJ's failure to include manipulative limitations in her RFC determination for problems associated with his hands and shoulders is unsupported by substantial evidence. When determining the RFC, the ALJ must consider all medically determinable impairments, even those not considered "severe." 20 C.F.R. 404.1545(a).

The ALJ determined the Plaintiff's impairments to his left hand did not necessitate more restrictive limitations than "lift, carry, push and pull up to 10 pounds occasionally" and "never climb ladders, ropes or scaffolds." (R. at 667.) Furthermore, she did not include limitations for Plaintiff's right hand and shoulders because she found no medically determinable impairments in those joints. (R. at 664–66.) Despite Plaintiff's citations to medical records which may support mild limitations, there is substantial evidence in the record to support the ALJ's determination. *See id.* She drew a logical bridge between the evidence and her conclusions. Plaintiff may disagree with the ALJ's decision not to include a specific limitation on "reaching, handling and fingering." That does not mean, however, that the ALJ failed to account for Plaintiff's limitations, nor does it mean her RFC determination is unsupported by substantial evidence.

**E.     Conclusion**

For the reasons stated above, the Court affirms the decision of the Acting Commissioner.

SO ORDERED on September 27, 2016.

    s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE